# Third District Court of Appeal

## State of Florida

Opinion filed October 6, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-90
Lower Tribunal Nos. 18-911SP, 20-22AP

_____

**All Insurance Restoration Services, Inc.
a/a/o Miguel Cediel and Mariela Cediel,**
Appellant,

vs.

**Citizens Property Insurance Corporation,**
Appellee.


An Appeal from the County Court for Miami-Dade County, Lawrence D. King, Judge.

Giasi Law, P.A., and Melissa A. Giasi and Erin M. Berger (Tampa), for appellant.

Luks, Santaniello, Petrillo & Cohen, and Lauren J. Smith (Stuart), for appellee.


Before LOGUE, LINDSEY, and HENDON, JJ.

HENDON, J.

All Insurance Restoration Services, Inc., a/a/o Miguel Cediel and Mariela Cediel ("AIRS" or "Plaintiff"), appeals from a final summary judgment entered in favor of Citizens Property Insurance Corp. ("Citizens" or "Defendant"). Based on the following undisputed facts, we affirm.

On October 22, 2017, the home of Miguel and Mariela Cediel ("Insureds") sustained water damage when the plumbing source to their refrigerator leaked. At the time of the loss, the property was insured by a homeowners policy issued by Citizens. Under the policy, following a loss, the Insureds have a duty to "[t]ake reasonable emergency measures that are necessary to protect the covered property from further damage, as provided under Additional Coverage F.2." As to "reasonable emergency measures," the Insureds' homeowners policy provides in relevant part as follows:

**F. Additional Coverages**
    **. . . .**

  **2. Reasonable Emergency Measures**

  **a.** We will pay up to the greater of $3,000 or 1% of your Coverage **A** limit of liability for the reasonable costs incurred by you for necessary measures taken solely to protect covered property from further damage, when the damage or loss is caused by a Peril Insured Against.

  **b.** We will not pay more than the amount in **a.** above, unless we provide you approval within 48 hours of your request to us to exceed the limit in **a.** above. In such

2

circumstance, we will pay only up to the additional amount for the measures we authorize.

If we fail to respond to you within 48 hours of your request to us and the damage or loss is caused by a Peril Insured Against, you may exceed the amount in **a**. above only up to the cost incurred by you for the reasonable emergency measures necessary to protect the covered property from further damage.

Further, the policy's Declaration page provides in relevant part:

IN CASE OF A LOSS TO COVERED PROPERTY, YOU MUST TAKE REASONABLE EMERGENCY MEASURES SOLELY TO PROTECT THE PROPERTY FROM FURTHER DAMAGE IN ACCORDANCE WITH THE POLICY PROVISIONS (MAY NOT EXCEED THE GREATER OF $3,000 OR 1% OF YOUR COVERAGE A LIMIT OF LIABILITY UNLESS YOU CALL US FIRST AND RECEIVE OUR APPROVAL). PROMPT NOTICE OF THE LOSS MUST BE GIVEN TO US OR YOUR INSURANCE AGENT, EXCEPT FOR REASONABLE EMERGENCY MEASURES, THERE IS NO COVERAGE FOR REPAIRS THAT BEGIN BEFORE THE EARLIER OF: (A) 72 HOURS AFTER WE ARE NOTIFIED OF THE LOSS, (B) THE TIME OF LOSS INSPECTION BY US, OR (C) THE TIME OF OTHER APPROVAL BY US. TO REPORT A LOSS OR CLAIM CALL 866.411.2742.

On October 26, 2017, the Insureds hired AIRS to perform water mitigation services, and the Insureds assigned their benefits under the homeowners policy to AIRS. AIRS completed the services on October 30, 2017. On that same day, the Insureds, through their attorney, notified Citizens of their claim, and Citizens inspected the property on November 17, 2017.

3

On November 29, 2017, AIRS sent an email to Citizens, attaching AIRS' "water mitigation package," which included, among other things, the assignment of benefits and an invoice for $7,238.75 for the water mitigation services. Prior to submitting this invoice, neither AIRS nor the Insureds requested prior approval from Citizens to exceed the $3,000 limit for reasonable emergency measures.

On December 2, 2017, Citizens sent a letter to AIRS, enclosing a $3,000 check "towards reasonable emergency measures limit of liability portion of the loss." The letter referred AIRS to "Section I – Property Coverages," of the policy, and specifically to section F.2.a. of the "reasonable emergency measures" provision, as quoted above.

After AIRS cashed the $3,000, AIRS filed a complaint against Citizens. AIRS alleged that Citizens breached the insurance contract by failing to completely pay AIRS for the emergency water mitigation services rendered to the Insureds.

Citizens moved for summary judgment against AIRS based on the undisputed facts and the language in the homeowners policy limiting coverage for "reasonable emergency measures" to $3,000, which amount Citizens already paid. AIRS filed an opposition to Citizens' motion for summary judgment, arguing that its email, which attached the assignment

4

of benefits and invoice, was its "request" to exceed the $3,000 coverage limit for reasonable emergency measures, and because Citizens failed to respond to the "request" within forty-eight hours, under section F.2.b. of the Reasonable Emergency Measures provision, Citizens must pay AIRS in full for the services rendered, not just $3,000.

On December 5, 2019, the trial court conducted a hearing on Citizens' motion for summary judgment. At the conclusion of the hearing, the trial court deferred ruling and advised the parties that it would prepare its own order. Thereafter, on December 10, 2019, the trial court rendered an order granting Citizens' motion for summary judgment and entered final judgment in favor of Citizens and against AIRS, stating the following:

> Defendant has fully satisfied its obligations under the insurance policy by paying the $3,000.00 Reasonable Emergency Measures policy limit. Plaintiff failed to meet its burden to show that Defendant breached the terms of the insurance Policy.
>
> The Court finds that as a matter of law, Plaintiff failed to make a request to obtain approval from Defendant to exceed the $3,000.00 Reasonable Emergency Measures policy limit. There was nothing in the email to Defendant on November 29, 2017, requesting approval to perform work in excess of $3,000.00. Under the plain and ordinary meaning of the Policy provision, a demand for payment in excess of $3,000.00 via an invoice for services that have already been completed is not a request to exceed the Reasonable Emergency Measures policy limit. This is a reasonable construction of the Policy, which furthers the intent and purposes of the parties. To conclude otherwise would strip Defendant of the ability to satisfy the intent behind the Reasonable Emergency Measures provision,

5

which is to mitigate costs by being given the ability to authorize additional reasonable emergency measures to be taken. As such, the Court finds that by paying Plaintiff $3,000.00, Defendant had fully satisfied its obligations under the policy. Therefore, summary judgment is granted as Defendant fully satisfied its obligations pursuant to the Reasonable Emergency Measures provision of the Policy.

AIRS's appeal followed.

The standard of review of a final summary judgment is de novo. See Certified Priority Restoration v. Citizens Prop. Ins. Corp., 46 Fla. L. Weekly D1546, *2 (Fla. 4th DCA June 30, 2021); Orozco v. McCormick 105, LLC, 276 So. 3d 932, 935 (Fla. 3d DCA 2019). Further, the standard of review as to whether a contract is ambiguous is de novo. See Dezer Intracoastal Mall, LLC v. Seahorse Grill, LLC, 277 So. 3d 187, 190 (Fla. 3d DCA 2019).

AIRS contends that the trial court rewrote the insurance contract and relieved Citizens of its obligation to reply to AIRS's email "request" within forty-eight hours, thereby denying AIRS contractual right to recover more than the $3,000 limit for reasonable emergency measures. Based on the following, we disagree.

In the final summary judgment, the trial court made two interrelated rulings:

(1) "There was nothing in the email to Defendant on November 29, 2017, requesting approval to perform work in excess of $3,000.00."

(2) "Under the plain and ordinary meaning of the Policy provision, a demand for payment in excess of $3,000.00 via an invoice for services that have already been completed is not a request to exceed the Reasonable Emergency Measures policy limit."

If the "language in an insurance contract is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written." Washington Nat'l Ins. Corp. v. Ruderman, 117 So. 3d 943, 948 (Fla. 2013). The term "request" is not defined in the policy, however, an undefined term "should be given its plain and ordinary meaning, and courts may look to legal and non-legal dictionary definitions to determine such a meaning." Gov't Empls. Ins. Co. v. Macedo, 228 So. 3d 1111, 1113 (Fla. 2017) (quoting Botee v. S. Fid. Ins. Co., 162 So. 3d 183, 186 (Fla. 5th DCA 2015)). The term "request" is defined as "[a]n asking or petition; the expression of a desire to some person for something to be granted or done; particularly for the payment of a debt or performance of a contract." The Law Dictionary Featuring Black's Law Dictionary Online Legal Dictionary 2nd Ed.[1] Request is also defined as "to ask for something, or to ask someone to do something, in a polite or

---

[1] https://thelawdictionary.org/request/#:~:text=An%20asking%20or%20petition%3B%20the,or%20performance%20of%20a%20contract.

7

formal way." MacMillan Online Dictionary.[2]

AIRS's email and submission of the invoice is nothing more than a demand for payment for services already rendered. Seeking payment of an invoice for services already rendered does not equate to requesting authorization to exceed the $3,000 limit. Therefore, although Citizen is required to respond within forty-eight hours to a request to exceed the $3,000 limit for reasonable emergency measures, it is not required to respond to a demand for payment of an invoice for reasonable emergency measures already rendered to an insured. As such, the trial court properly entered final summary judgment in favor of Citizens and against AIRS because under the unambiguous language in the insurance contract, Citizens satisfied its contractual obligations when it submitted the $3,000 check to AIRS. See Certified Priority Restoration v. Universal Ins. Co. of N. (addressing identical policy language as in the instant case, and concluding that the record shows that the insurer was entitled to final summary judgment where Certified Priority Restoration ("CPR") "failed to request the insurer allow it to exceed the $3,000 limit before submitting the invoice for the completed [water mitigation] work," and where "the insurer paid $3,000 to CPR"); see also Certified Priority Restoration v. Citizens Prop. Ins. Corp.,

_____

[2] https://www.macmillandictionary.com/us/dictionary/american/request_2.

46 Fla. L. Weekly D1546, *2 (Fla. 4th DCA June 30, 2021).  Accordingly, we affirm the final summary judgment entered in favor of Citizens.

Affirmed.