# Third District Court of Appeal

## State of Florida

Opinion filed July 19, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1899
Lower Tribunal No. 17-29252
_____

**Universal Property & Casualty Insurance Company,**
Appellant,

vs.

**Jorge O. Gonzalez-Perez,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Barbara Areces, Judge.

Parafinczuk Wolf, P.A., and Jason B. Wolf, Austin Carr and Jean Fernandez (Fort Lauderdale); Russo Appellate Firm, P.A., and Elizabeth K. Russo and Paulo R. Lima, for appellant.

Law Offices of Geoffrey B. Marks, and Geoffrey B. Marks, for appellee.

Before FERNANDEZ, MILLER and BOKOR, JJ.

BOKOR, J.

Universal Property & Casualty Insurance Company appeals a final judgment entered in favor of its insured, Jorge O. Gonzalez-Perez, following a jury trial. Universal also appeals the trial court's prior denial of a motion for directed verdict. Relying on Arguelles v. Citizens Property Insurance Corp., 278 So. 3d 108 (Fla. 3d DCA 2019), and as more thoroughly explained below, we reverse.

BACKGROUND

Gonzalez-Perez filed a claim with his insurer, Universal, based on damage resulting from an act of vandalism at his Miami residential property on or around May 16, 2017. Universal didn't pay the claim, and on December 20, 2017, Gonzalez-Perez filed a one-count petition for declaratory relief, seeking a declaration that coverage applied for the loss. In an amended response, Universal argued that coverage couldn't apply because the policy solely covered damage to the "residence premises," as defined by the policy, and Gonzalez-Perez did not "reside" in the Miami property at the time of the vandalism.

Gonzalez-Perez purchased the Miami property in June 2013, and lived there until December 2014, when he began to rent the property to third parties. Thereafter, Gonzalez-Perez lived at a rental home in Colorado for a year and a half before moving into an apartment in Broward County,

2

Florida, in June 2016. Gonzalez-Perez testified that he intended to return to the Miami property after the tenants' lease ended on May 1, 2017. However, between May 1, 2017, and the discovery of the vandalism, Gonzalez-Perez and his family were living in Broward County. Importantly, despite any intention to move back into the property, at the time of the incident at issue, Gonzalez-Perez and his family resided in Broward County, and the children were enrolled at school in Broward County.

The insurance policy at issue specifically covers damages caused by "[v]andalism or malicious mischief" to the "residence premises." So, this case turns on whether, at the time of the loss, the property constituted Gonzalez-Perez's "residence premises." The policy defines "residence premises" as:

a. The one family dwelling, other structures, and grounds; or

b. That part of any other building;

where you reside and which is shown as the "residence premises" in the Declarations.

"Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

The policy, however, fails to define "reside." Based on the facts elicited in discovery, and this court's opinion in Arguelles, Universal moved for summary judgment, maintaining that the subject property didn't qualify as a

3

"residence premises" at the time of the loss.[1]   The trial court denied the

motion, and the case proceeded to a jury trial on the question of whether

---

[1] In Arguelles, the court interpreted a policy containing the same "residence premises" language as the one presently at issue and concluded that the policy unambiguously limited coverage to the place where the insured was living at the time of the loss:

> Here, the policy language is clear and unambiguous.  It extends dwelling coverage to the "residence premises," unequivocally defined within the policy as the "**unit where you reside**." (Emphasis added).   Although the term "reside" is undefined within the policy, "[w]hen a term in an insurance policy is undefined, it should be given its plain and ordinary meaning, and courts may look to ... dictionary definitions to determine such a meaning." Botee v. S. Fid. Ins. Co., 162 So. 3d 183, 186 (Fla. 5th DCA 2015) (citations omitted); see Penzer [v. Transp. Ins. Co.], 29 So. 3d [1000,] 1005 [(Fla. 2010)] ("[T]he first step towards discerning the plain meaning of [a term undefined by an insurance policy] is to 'consult references [that are] commonly relied upon to supply the accepted meaning of [the] words.'") (third and fourth alternations in original) (quoting Garcia [v. Fed. Ins. Co.], 969 So. 2d [288,] 292 [(Fla. 2007)]).  "Reside" has two definitions, "[t]o live in a place permanently or for an extended period of time." *Reside,* The American Heritage Dictionary (5th ed. 2019); see also *Residence,* Black's Law Dictionary (11th ed. 2019) ("The act or fact of living in a given place for some time ... The place where one actually lives ...").   Because the uncontroverted facts adduced at the summary judgment hearing confirmed that at the time of the loss, Arguelles was living in his established abode in New York, and his Miami condominium was solely occupied by his two tenants, he was not entitled to coverage under either definition.  Accordingly, we conclude that the lower tribunal properly granted final summary judgment. See Harrington v. Citizens Prop. Ins. Corp., 54 So. 3d 999, 1002- 03 (Fla. 4th DCA 2010) (finding the insureds' property did not fall under their homeowners insurance policy's definition of "residence premises," as insureds were required to reside in the

4

Gonzalez-Perez resided in the property pursuant to the policy provision. Universal moved for a directed verdict at the close of Gonzalez-Perez's case on the same basis as the unsuccessful motion for summary judgment, which motion was denied. Universal sought a special jury instruction defining the term "reside" consistent with Arguelles. The trial court denied the requested instruction, concluding that Arguelles was distinguishable as the tenants had moved out and Gonzalez-Perez intended to or was preparing to move back. The jury then entered a verdict, specifically finding that the loss to the property was not excluded under the policy because Universal didn't prove that "the subject property was not [Gonzalez-Perez's] 'residence premises.'"

building described in the declarations); Centre Ins. Co. v. Blake, 370 F. Supp. 2d 951 (D.N.D. 2005) (holding that a homeowners insurance policy's definition of covered "residence premises" defined as "where you reside" did not extend coverage to a duplex after the insured had moved out and rented the duplex to a third party); Heniser v. Frankenmuth Mut. Ins. Co., 449 Mich. 155, 534 N.W.2d 502 (1995) (holding the policy's definition of "residence premises" was an unambiguous statement of coverage requiring that the insured "reside" in the premises at the time of loss); 4A John Alan Appleman & Jean Appleman, Insurance Law and Practice § 2832 (Supp. 2005) ("Actual residence by the insured is required ... by the ... definition of 'residence premises,' as 'the one or two family dwelling, other structures, and grounds or that part of any other building where you reside and which is shown as the residence premises' in the Declarations.'").

278 So. 3d at 111–12 (footnote omitted).

5

ANALYSIS

On appeal, Universal argues that the trial court erred in denying its motion for directed verdict and sending this question to a jury.[2] Gonzalez-Perez, Universal claims, did not "reside" in the covered property at the time of the loss based on the undisputed facts of the case. Applying Arguelles, the trial court should have excluded coverage as a matter of law. We agree.

Universal's policy limited damage to an individual's "residence premises." The issue here lies in whether Gonzalez-Perez resided in the Miami property at the time of the vandalism based on the meaning of "reside" in the context of the policy. When policy language is clear and unambiguous, we construe this language "in accordance with the plain language of the polic[y] as bargained for by the parties." Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000). "[I]n construing insurance policies, courts should read each policy as a whole, endeavoring to give each provision its full meaning and operative effect." Id. Moreover, "[w]hen a term in an insurance policy is undefined, it should be given its plain and ordinary meaning, and courts may look to legal and non-legal dictionary definitions to

---

[2] We review an order on a motion for directed verdict under a de novo standard of review. See Hernandez v. Mishali, 319 So. 3d 753, 757 (Fla. 3d DCA 2021). Further, "[t]he construction of an insurance policy is a question of law to be determined by the court." Allstate Ins. Co. v. Swain, 921 So. 2d 717, 719 (Fla. 3d DCA 2006).

6

determine such a meaning." Botee, 162 So. 3d at 186. Arguelles affirmed a grant of summary judgment in favor of the insurer as to a claim under a similar policy that defined "residence premises" as the "unit where you reside shown as the 'Location of Residence Premises' in the Declarations." 278 So. 3d at 110. Arguelles held that, based on the established definition, the policy unambiguously required that the coverage be denied because the insured was residing in New York at the time of the loss, rather than in his Miami condominium, which was being occupied by his two tenants. Id. at 112.

Under the residence definition provided by Arguelles, combined with the facts elicited at trial, Universal was entitled to a directed verdict. The testimony provided at the jury trial confirmed Gonzalez-Perez was still living in Broward County at the time of the vandalism. The fact Gonzalez-Perez was not leasing the Miami property and was soon to move back in when it was vandalized does not, as Gonzalez-Perez argues, change the applicability of Arguelles to the facts of this case. The Gonzalez-Perez family didn't live in the Miami property at the time of loss, their residence was the Broward property. The trial court therefore erred in denying Universal's motion for directed verdict. We reverse the final judgment and remand for the entry of a directed verdict in favor of Universal.

Reversed and remanded with instructions.